Gaelaito, J.
delivered the opinion of the court.
The plaintiffs allege, that as heirs of their father they are the owners of a piece of ground, having a front of thirty-seven feet on Oircus-street, running hack to St. Paul-street, by lines that gradually close, so that on the latter street there is a front of sixteen feet. They say, the defendants have taken possession of said piece of ground, and set up title to it. The defendants, Byan, and Park, and Field, in their separate answers admit, they are in possession of portions of the ground claimed, which has been divided into six lots of different dimensions; they set up titles, derived from a probate sale, made of a portion of the estate of the late Jean Gravier, who, they allege, was the real owner, and in possession at the time of his death; they plead a prescription of ten and twenty years, and call the curator of the estate of Gravier, in warranty. O’Moran for answer sets up the same grounds of defence as his co-defendants, and further claims of the plaintiffs two thousand dollars for improvements, put on the lot in his possession; and also [528] calls Gravier’s curator in warranty. Janin alleges defences similar to Park, and Byan, and Field, and further says, that the sheriff’s sale to Edward Livingston, under whom the plaintiffs claim, is of no force or validity, and if it be, it does not include the ground in controversy; he also calls the curator in warranty.
The curator of the succession of Gravier pleads a general denial, and further, his intestate held the property up to the time of his death, under an adjudication made to him, by the Spanish authorities, in 1797, of all the estate of Bertrand Gravier. He admits the sales to the defendants, and also says, that the sale from the sheriff to Livingston does not include or cover the premises ; but if it does, he says, it is null and void, as none of the formalities required by law to render the sale valid, were complied with, nor was said sale accompanied by such proceedings as were necessary to make it translative of property.
The evidence shows, that on the 80th of September, in the year 1811, Jean Gravier, by public act, mortgaged to Joseph Bichet and others, “ Unlot de terre contenant douze terrains situés dans le faubourg Ste. Marie, ayant cent huit pieds de face ii la rue du.Cirque sur toute la profondeur, joignant d’un eóté a. la succession Ohesneau, et de 1’autre au Sieur Jacob Moquin, sur lequel lot de terre se trouve établie une briqueterie, &c.” Upon this mortgage, in October, 1814, the mortgagees commenced an action, that was prosecuted to judgment, of which Gravier was notified; subsequently an order of seizure and sale was issued, and levied on the property in conformity with the judgment; it was sold under this order to Edward Livingston, on twelve months credit, as appears by the returns of the sheriff and his deed, in which it is described as “ a lot of ground situated in the suburb St. Mary, together with all the brick-yard and other buildings thereon erected; said lot containing one hundred and eight feet on Oircus-street, adjoining on the one side the property of the estate of Ohesneau, and on the other by the property belonging to Mr. Jacob Moquin.” By an act, dated the [529] 29th of the month of April, in the year 1806, Jean Gravier sells to Jacob *690 Moqnin “ Une portion de terre située au Faubourg Ste. Marie, bornée d’un cóté par la Veuve Delord, de l’autre par nn hangard appartenant au vendeur, qui se nomme hangard k poterie, rue du Cirque, contenaat six cent dix huit pieds de face depuis la barriere de la Veuve Delord.” By reference to the evidence of Pilié, the city surveyor, it appears, he has more than once measured the line of this property on Circus-street, and he says, it reached to Moquin’s fence, adjoining the brick-yard.
By reference to another sale, from Gravier to John Goodwin, it will appear, he sold him throe squares, supposed to contain thirty-six lots, of sixty feet front, by one hundred and twenty deep, on which was situated a brickyard, and the buildings and fixtures necessary to carry it on. It is also stipulated, that Goodwin was to have the right of taking earth out of Gravier’s Canal in Poydras-street, to deepen the same; also the privilege of cutting wood on his land; he is also hound to open two streets on these squares at his own expense, and if more than thirty-six lots are found to be in the squares, Goodwin is to have them, if he shall pay at the rate of four hundred dollars for each. Prom an inspection of the plans in the record, it is evident, thex-e wex-e more than thirty-six lots, which was probably discovex'ed, when Goodwin laid off Hevia-street, and as it does not appear he ever paid for the extra number of lots, it accounts for a portion of the brick-yard still remaining in Gravier’s possession. Goodwin afterwards sold the property to the heirs of Obesneau.
A number of years after these sales, Mr. Livingston sold to the ancestor of the plaintiffs, and describes the property as “ douze lots de terre, situés au faxxbourg Ste. Marie, compris entre Ies rues du Cirque, St. Paul, Hevia, et la pi’opriété de Jacob Moquin, ayant cent huit pieds de face sur la px’emiére, autant sur la seconde, et sept cent vingt pieds sur chacune des deux autres limites and further describes it as the same property purchased at the sheriff’s [530] sale, under the execution issued in the suit of Richet & Co. v. Gravier. Several witnesses prove, that Herman took possession of all the ground between Hevia-street and Moquin’s fence, and inclosed it, which inclosures were ;kept up by his agent, some time after he left the State, who also rented out ¡the propex-ty. There is no evidence to show, that Gravier ever possessed or .■claimed the property after the sheriff’s sale in 1816.
The first question is as to the validity of the sheriff’s sale. It may now ‘be considered as the settled opinion of this court, that whenever a judgment, ■execution and sale are produced, it is sufficient to convey the property, un’less-such ex-ror or fraud is pleaded and established, as will set aside sales in ■ ordinary cases. 16 La. Kep. 433; Id. 547; and the authorities cited in those ..cases. In this case we have a petition, asking an order of seizure and sale, a regular affidavit, the act of mortgage attached, the order of the judge, and notice to defendant; then follows an answer or opposition, and another or- ■ der of the judge; after which there appears to have been a trial and judgment regularly rendex-ed, in consequence of which the ox’der of seizure and .■sale was.continued; a sale took place, and a deed was made by the sheriff, who mákes a return of his proceedings. We think it amply sufficient, to diwest Jean.Gravier of all his rights. This sale was made in 1816, and Gravier *691 died in 1834: yet there is no evidence, he ever claimed the property or complained of the sale.
Whether the sale includes the ground in controversy, depends upon the remaining question in the case. f
The description of the property in the sale from Livingston to Harman, seems to us definite and particular; the previous descriptions in other acts conform so nearly to it, there cannot exist a doubt as to the identity. In all those aóts specific boundaries are given, viz., from Ohesn'eau’s boundary to that of Moquin, -which is a sale per mersionem, or a sale from one fixed boundary to another, which has always been held to include all the ground between the points mentioned, whether the measure be correctly stated or not. La. Code, art. 2471; 14 La. Eep. 497; 3 La. Eep. 91; 5E S. 243.
The witnesses all state, there was a fence on the line between Moquin [531] and the brick-yard; Pilié says, the property was inclosed by Harman’s heirs or their agent by a fence on Hevia and St. Paul’streets, connecting it with Moquin’s line, on which there was already a fence; and in front on Oircusstreet. Other witnesses speak of this possession and inclosure, or reparation of existing inclosures. We think, the plaintiffs have made out their case.
The judgment of the district court is therefore affirmed, with costs.